Barron, J.
This is an action of tort for deceit in the sale of a building to the plaintiff. The finding was for the plaintiff. The building in question contained 5 stories and 16 apartments of 76 rooms, with stores, heated by the owner; was built before 1876, and was purchased for $20,000.00, with $2,000.00 cash down and the balance on a mortgage. The deed was taken on November 18, 1940. All matters relating to the purchase of the property were left by the plaintiff to her husband. Before the sale, the broker, with other brokers, had a list of properties owned by the defendant for sale. He met the plaintiff and her husband in September through a friend, showed them a property not owned by the defendant in which they were not interested and then suggested to the plaintiff that she might be interested in this particular property. The plaintiff and her husband *72 testified that they were on the premises an hour and a half and say they did not go into the cellar, and that the broker said the cellar and property were in good condition.
The broker testified that he told them the cellar was in good condition and did not tell them the property was in perfect condition, but that he told them it needed repairs and was in good condition, and that the plaintiff’s husband did go into the cellar and saw a sump pump in a pit near the boiler and that he asked what the pump was for and the broker told him for emergencies. The cellar was not wet at that time.
The president of the defendant bank, who handled the negotiations for the sale on behalf of the defendant, testified that the first he knew that the broker had a customer, or was interested in selling the property, was on November 6 or 7, 1940, when the broker came in with a signed offer in writing to purchase from the defendant, that the offer was accepted and an agreement prepared and signed by the plaintiff’s husband and on behalf of the bank on November 9, 1940; that the plaintiff’s husband said that he had been in the cellar and that he, the president, did not tell the plaintiff’s husband that the property was in good condition.
The plaintiff’s husband testified that he asked the president of the bank about the cellar and that the president said it was in good condition. The broker who was present at the conversation between the president and the plaintiff’s husband testified the president said that he had spent much for repairs and had not finished, that the property needed further repairs and was in good condition.
The plaintiff testified that the day after papers were passed they were told by the janitor when they spoke of putting in an oil burner that it would not operate as the cellar was flooded at times.
*73 The first time that the plaintiff called the attention of the defendant to the water in the cellar was in April, 1941, when the cellar was flooded.
There was testimony that there is a pit about 3% feet long by 3 feet wide and 8 inches deep near the boiler and below the level of the cellar and a sump pump for pumping water out of the cellar.
After the sale, the broker received a commission from the defendant and gave $150. of his commission back to the plaintiff’s husband who said he needed it for repairs.
In April, 1941, and a number of times thereafter, the cellar was flooded. The plaintiff’s husband testified that the water put out the boiler fires and damaged the grates, and that the sump pump did work.
There was evidence by a witness for the plaintiff that the cellar walls had cracked and settled, and testimony on the behalf of the defendant that the cellar walls were sound and were not undermined.
After the first flood, the plaintiff’s husband saw the president of the defendant bank and complained of the water in the cellar and the president said that if he did not like the building he would have the bank foreclose the property and after the foreclosure he would give him the money back, and the plaintiff’s husband testified further that he said his wife did not want to give up the building, that she wanted to keep it. The president testified that he told the plaintiff’s husband that if he felt he had been misled in any manner that he would recommend to the investment committee that the bank take the property back by foreclosure and give him back his money, and the plaintiff’s husband said, “Oh, no. I don’t want you to do that.”
The defendant filed several requests for rulings which were denied. It seems unnecessary to discuss more than *74 the following request and the disposition of the same by the trial justice.
“1. The evidence does not warrant a finding for the plaintiff.” “Defendant’s Request #1. Denied. I find on the facts that the defendant, through its broher as agent, misrepresented the condition of the premises with intent to deceive the plaintiff and accomplished the sale by this means.”
The court states that the sale was accomplished because of misrepresentation made by the broker as agent.
In order to recover against a defendant for misrepresentation made by a third person there must be some evidence from which an inference can be drawn that such third person was an agent with at least apparent, if not direct authority to bind his principal.
A real estate broker who merely has property listed to sell at a certain price is not a general but a special agent of limited authority, without power to bind the principal beyond the express authority conferred upon him and the purchaser must ascertain the limitations on the broker’s authority at his peril. Harrigan v. Dodge, 216 Mass. 461. Janeczko v. Manheimer, 77 Fed. (2d) 205, 207. DeBlois v. Boylston & Tremont Corp., 281 Mass. 481 Mass. 498, 514.
There is no evidence that the defendant authorized the broker to make any representation about the cellar, or knowingly permitted him to do so.
The propel ty was listed with the broker in common with other brokers. He had no ostensible powers to make any representation. The normal inference was that he was only .authorized to find a purchaser with whom the principal was to conduct the final negotiations. He was a “special agent” of a most restricted kind. “The familiar doctrine that one who deals with an agent is not affected by private *75 instructions limiting his apparent authority, but as to Mm the ostensible powers of the agent are the real powers has little or no application to a ‘special agent.’ ” Marquandt v. Boston Y. W. C. A., 282 Mass. 28, 30.
The plaintiff dealt with an agent of obviously limited powers and was bound to act accordingly and not rely upon any representation he. made. American Railway Express Co. v. Mohawk Dairy Co., 250 Mass. 1, 11. Harrison v. City Fire Ins. Co., 9 Allen 231, 233.
There was no evidence to warrant the trial justice in making the finding that the broker made the misrepresentations as agent of the defendant, and as the deMal of the request was based upon this finding of fact, the request was wrongly denied. New trial ordered.